# EXHIBIT A



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Federal National Mortgage Association
_____
                                    Plaintiff

                    vs.                                            Case Number    13 - 0003   70

Internal Revenue Service
_____
Serve:
United States Attorney's Office                    Defendant
District of Columbia, 555 Fourth Street, N.W.
Washington, DC 20530
                                    **SUMMONS**

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Ralph J. DiPietro, BWW Law Group, LLC
_____              _Clerk of the Court_
Name of Plaintiff's Attorney

4520 East-West Highway, Suite 200
_____     By _____
Address                                                              Deputy Clerk
Bethesda, MD 20814

301-961-6555
_____     Date   5/31/13
Telephone

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

RECEIVED
6/21/13
R. Cowan

FORM SUMMONS - Jan. 2011                                                                          CASUM.doc




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

Federal National Mortgage Association
_____
                                    **Demandante**

                        contra

                                                        Número de Caso: _____

Internal Revenue Service
Serve:        United States Attorney's Office
              District of Columbia            **Demandado**
              555 Fourth Street, N.W.
              Washington, DC 20530            **CITATORIO**

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio.  Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación.  Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante.  El nombre y dirección del abogado aparecen al final de este documento.  Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados.  Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante.  Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Ralph J. DiPietro, BWW Law Group, LLC
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

4520 East-West Highway, Suite 200
_____          Por: _____
Dirección                                                    Subsecretario
Bethesda, MD 20814

301-961-6555
_____          Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA.  SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO.  SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

    Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

FEDERAL NATIONAL MORTGAGE ASSOCIATION
    Vs.                           C.A. No.     2013 CA 003770 B
INTERNAL REVENUE SERVICE

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge NEAL E KRAVITZ
Date:  May 31, 2013
Initial Conference: 9:30 am, Friday, August 30, 2013
Location:  Courtroom 219
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

Federal National Mortgage Association

                                                 Demandante

      contra

                                                   Número de Caso: _____

Internal Revenue Service
Serve:       United States Attorney's Office
           District of Columbia       Demandado
           555 Fourth Street, N.W.
           Washington, DC 20530      **CITATORIO**

Al susodicho Demandado:

      Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

      A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Ralph J. DiPietro, BWW Law Group, LLC

_____
Nombre del abogado del Demandante

                                             *SECRETARIO DEL TRIBUNAL*

4520 East-West Highway, Suite 200
_____
Dirección                              Por: _____
Bethesda, MD 20814                                  Subsecretario

301-961-6555
_____
Teléfono                                    Fecha _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

      번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

      IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

      Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

                              Vea al dorso el original en inglés
                              See reverse side for English original

## IN THE DISTRICT OF COLUMBIA SUPERIOR COURT
### CIVIL DIVISION

FEDERAL NATIONAL MORTGAGE
ASSOCIATION
3900 Wisconsin Ave NW
Washington, DC 20016

        Plaintiff,

v.

INTERNAL REVENUE SERVICE
10th St & Pennsylvania Avenue NW
Washington, DC 20004
SERVE:
United States Attorney's Office
District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
*AND*
Eric H. Holder, Jr.
Attorney General of The United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

EVA RAMSEY
9751 Quiet Brook Lane
Clinton, MD 20735

        Defendants.

Case No. 13 - 0 0 0 3 7 7 0

RECEIVED
Civil Clerk's Office
MAY 3 1 2013
Superior Court of the
District of Columbia
Washington, D.C.



### COMPLAINT

### ACTION INVOLVING REAL PROPERTY

The Federal National Mortgage Association (hereinafter "Fannie Mae") by undersigned

counsel Ralph J. DiPietro, files this action, and states as follows:

### PARTIES AND JURIDICTION

1

1. Fannie Mae is a Government-Sponsored Entity headquartered at 3900 Wisconsin Ave., NW Washington, DC 20016, and is the record owner of certain real property located at 4001 D Street SE, Washington, DC 20019 more specifically described as:

> Lot Numbered Sixty-Four (64) in Lot Number Fifty-Three Hundred Ninety-Seven (5397) in the Subdivision made by Dan Polin and others, as per plat recorded in Liber 122 at Folio 65 in the Office of the Surveyor for the District of Columbia.

(hereinafter "the Property") by virtue of a title deed, recorded with the Recorder of Deeds at Document Number 2010081166. See attached Title Deed, incorporated by reference as **Exhibit A.**

2. The Internal Revenue Service (the "IRS") is a bureau of the Department of the Treasury, an agency of the United States Federal Government, with headquarters at 10th St & Pennsylvania Avenue NW, Washington, DC 20004, and holder of a Tax Lien on the Property in the amount of Thirty-Nine Thousand Three Hundred Thirty-Four and 14/100 Dollars ($39,334.14), recorded with the Recorder of Deeds at Document Number 2010014088. See attached Notice of Federal Tax Lien, incorporated by reference as **Exhibit B.**

3. Eva Ramsey is a person, and former owner of the Property, currently residing at 9751 Quiet Brook Lane, Clinton, MD 20735, by virtue of a title deed (the "Prior Deed"), recorded with the Recorder of Deeds at Document Number 2006052228. See attached Prior Deed, incorporated by reference as **Exhibit C.**

4. Howard N. Bierman, Jacob Geesing and Carrie M. Ward (collectively "the Substitute Trustees") are principals in the law firm BWW Law Group, LLC (formerly Bierman, Geesing & Ward, LLC), located at 4520 East-West Highway, Suite 200, Bethesda, Maryland, and were Substitute Trustees for a Deed of Trust encumbering the Property, pursuant to a Deed of Appointment of Substitute Trustee, recorded with the Recorder of Deeds at Document

Number 2009130136. See attached Deed of Appointment of Substitute Trustee, incorporated by reference as **Exhibit D.**  The Substitute Trustees are not named as parties because they consent to the relief requested in this Complaint.

5. The Property is located within the District of Columbia.

6. The Court has personal jurisdiction over the Defendants herein.

7. Venue is proper in the Superior Court of the District of Columbia.

<u>FACTS</u>

**Plaintiff incorporates by reference all those facts and allegations contained above.**

8. On March 31, 2006, Eva Ramsey, encumbered the Property with a Deed of Trust securing a Note in the original amount of Three Hundred Thousand and no/100 Dollars ($300,000.00). See attached Note, **Exhibit E,** and Deed of Trust, **Exhibit F,** both of which are incorporated hereto by reference.

9. The Deed of Trust was recorded with the Recorder of Deeds for District of Columbia on November 17, 2006 as Document Number 2006052229.

10. On August 2, 2009, Eva Ramsey defaulted on her mortgage, causing an acceleration of her debt secured by the Deed of Trust.

11. A Notice of Foreclosure Sale of Real Property or Condominium Unit was recorded with Recorder of Deeds at Document Number 201055309. See attached Notice of Foreclosure Sale of Real Property or Condominium Unit, incorporated by reference as **Exhibit G.**

12. On July 22, 2010, the Property was sold at auction to satisfy the debt secured by the Deed of Trust.

13. Plaintiff was the highest bidder at auction, purchasing the property for the sum of Two Hundred Fifty Thousand Five Hundred Ninety Five and 14/100 Dollars ($250,595.14).

3

14. Defendant IRS did not receive statutory notice of the above sale, though they did receive constructive notice.

## COUNT I – Rescission

**Plaintiff incorporates by reference all those facts and allegations contained above.**

15. Plaintiff, mistakenly believing that it was taking title to the Property free of encumbrance and without actual knowledge of the Tax Lien held by Defendant IRS, took title to same. See **Exhibit A**.

16. Defendant Substitute Trustees, mistakenly believing that they were conveying title to the Property free of encumbrance and without actual knowledge of the Tax Lien held by Defendant IRS, conveyed title to same. See **Exhibit A**.

17. That as a result of this mistaken belief, Defendant IRS's Tax Lien survived the sale, when it should have been extinguished, given that the difference between the debt secured by the Deed of Trust and the sale price exceeded the amount of the Tax Lien.

18. There is no adequate remedy at law.

**WHEREFORE,** Plaintiff prays this Honorable Court grant the following relief:

A. That this Court rescind the Deed attached hereto as **Exhibit A;**

B. That this Court vacate the sale held July 22, 2010;

C. That this Court reinstate and revive the Prior Deed and Deed of Trust, attached hereto as **Exhibits D** and **F**, respectively, *pro nunc tunc* to July 21, 2010, returning Defendant Eva Ramsey to title as the record owner of the Property, and reviving the terms of the Deed of Trust and Note; and

D. That this Court grant such further relief as may be necessary and just under the circumstances.

## COUNT II – Mandamus (in the Alternative)

**Plaintiff incorporates by reference all those facts and allegations contained above.**

19. To the extent that rescission of the vesting deed is not available, the IRS cannot enforce its lien, as it has no value, and therefore, they must discharge the tax lien.

20. Plaintiff was at the time of sale, and today remains, the holder of a first-priority security interest in the Property, in the form of a Note secured by a Purchase-Money Deed of Trust.

21. Plaintiff, when purchasing the Property at auction, did not intend that its lien be released unless and until the Property is conveyed to it free and clear of all liens, including the IRS lien.

22. The tax lien currently held by the IRS remains in a junior position with respect to the security interest of Fannie Mae.

23. Despite the fact that at the time of sale there was no equity in the property with which to satisfy the tax lien, rendering it worthless, the IRS refused to discharge their interest in the property pursuant to 26 U.S.C.A. § 6325(b)(2)(B). A copy of the IRS Denial is attached hereto as **Exhibit H**, and is incorporated by reference.

24. The IRS has taken the position that Fannie Mae must satisfy their valueless lien or "vacate the sale and re-advertise." **Exhibit H.**

25. The current assessed value of the Property, according to the District of Columbia's Office of Tax and Revenue, is $224,540. A copy of the District of Columbia's property valuation retrieved from District of Columbia's taxpayer service center website is attached hereto as **Exhibit I**, and is incorporated by reference. This is $26,055.14 less than the amount garnered at the 2010 sale.

26. The proposed value of the Property for tax year 2014, according to the District of Columbia's

5

Office of Tax and Revenue, is $215,960.  **Exhibit I**.  This is $34,635.14 less than the amount garnered at the 2010 sale.

27. If, as the IRS suggests, Plaintiff vacates the sale, re-advertise, and re-sell the property with statutory notice to the IRS, there will still be insufficient funds to satisfy their tax lien, and it will be extinguished.

28. Plaintiff is willing to allow the IRS to exercise any rights it would have had had they been property noticed at the time of sale.

**WHEREFORE,** Plaintiff prays this Honorable Court grant the following relief:

A. Order Defendant IRS to Discharge the Property from the Federal Tax Lien pursuant to 26 U.S.C.A. § 6325(b)(2), if they are unwilling to exercise their right of redemption and purchase the property for the amount Plaintiff purchased same at the sale held July 22, 2010;

B. That this Court grant such further relief as may be necessary and just under the circumstances.

Respectfully Submitted:

Ralph J. DiPietro, Esq.
D.C. Bar No. ~~XXXXXX~~ 430127  (PJD)
BWW Law Group, LLC
4520 East-West Highway
Suite 200
Bethesda, MD 20814
Phone: 301-961-6555
Fax: 301-961-6545
ralph.dipietro@bww-law.com

6



LT1-5-2010081166-1

BGWW#: 92188

## SUBSTITUTE TRUSTEES' DEED

THIS DEED, is made this _24th_ day of _August_ 2010, by and between HOWARD N. BIERMAN, Substitute Trustee, hereinafter referred to as "Substitute Trustee", and Federal National Mortgage Association, 7105 Corporate Drive, Mail Stop PTX-C-35 , Plano, TX 75024, hereinafter referred to as "Grantee".

WHEREAS, Eva L. Ramsey, by Deed of Trust dated March 31, 2006, and recorded among the Land Records of the District of Columbia as Instrument No. 2006052229, did grant and convey unto all of the hereinafter described land and premises and appurtenances, in trust to secure the payment of a certain debt therein fully set forth; and upon default in the payment thereof to sell the said land and premises and appurtenances of public auction, and out of the process to pay the said debt; and to convey that said land and premises and appurtenances unto the purchaser thereof, all of which will more fully and at large appear upon reference in said Deed of Trust; and

WHEREAS, Howard N. Bierman was appointed Substitute Trustee by an instrument duly recorded among the aforesaid Land Records; and

WHEREAS, default having been made in the payment of said debt, the 'Substitute Trustee, in execution of the trust declared in said Deed and by direction of the parties thereby secured, after previous public advertisement therefor for five days in The Washington Times newspaper and after investigation and compliance with the provisions of Section 200 of the Service Members' Civil Relief Act; and being in receipt of evidence that a written notice of the proposed sale was sent by certified mail, return receipt requested, to the owner of the hereinafter described land, at the mortgagor's last known address with a copy thereof filed with the Recorder of Deeds for the District of Columbia, the 'Substitute Trustee, herein proceeded to make sale of said land and premises and appurtenances; and on July 22, 2010, at the time and place advertised, did sell the same at public auction unto Grantee which as the highest and best bidder therefor became the purchaser thereof at and for the sum of $250,595.14; and

NOW, THEREFORE, THIS DEED WITNESSETH, that the Substitute Trustee as aforesaid, do hereby grant and convey unto Grantee the following described land and premises, situate, lying and being in the District of Columbia, and known and distinguished as:

**LOT NUMBERED SIXTY-FOUR (64) IN SQUARE FIFTY-THREE HUNDRED NINETY-SEVEN (5397) IN THE SUBDIVISION MADE BY DAN POLIN AND OTHERS, AS PER PLAT RECORDED IN LIBER 122 AT FOLIO 65 IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA.**

and being known as 4001 D Street SE, Washington, DC  20019

more particularly described in the Deed of Trust hereinbefore mentioned, said description being incorporated by reference herein, for all the particulars thereof, together with the improvements, ways, easements, rights, privileges, and appurtenances to the same belonging, or in anywise appertaining, and all the right, title, interest and estate, legal, equitable and otherwise, of the said 'Substitute Trustee as aforesaid.

Whenever used, the singular number shall include the plural, and plural the singular, and the use of any gender shall be applicable to all genders.

IN TESTIMONY WHEREOF, the 'Substitute Trustee as aforesaid, have set their hands and seals as the day and year first above written.

Signed, sealed and delivered in the presence of: 

LT2-0-0-2



**EXHIBIT**

tabbies

*A*

Howard N. Bierman or
Jacob Geesing or
Carrie M. Ward
Sole Acting Trustee

STATE OF Maryland                    )
COUNTY OF Montgomery                 ) ss.

I, Abegail Saliente , a Notary Public in and for the aforesaid jurisdiction do
hereby certify that the above Substitute Trustee Howard N. Bierman , personally
appeared before me in said jurisdiction, being personally well known to me or satisfactorily proven
to me as the person who executed this Deed and acknowledged the same to be their intentional act
and deed.

Given under my hand and seal this 24th day of August , 2010.

Abegail Saliente
Notary Public

My Commission Expires:

AFTER RECORDING, PLEASE RETURN TO:
Bierman, Geesing, Ward & Wood, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814



Grantees:

Federal National Mortgage Association
7105 Corporate Drive, Mail Stop PTX-C-35 , Plano, TX 75024

Grantors:

Howard N. Bierman, Substitute Trustee
Jacob Geesing, Substitute Trustee
Carrie M. Ward, Substitute Trustee
4520 East West Highway, Suite 200
Bethesda, MD 20814

Doc# 2010081166 Fees:$2783.05
09/16/2010   12:20PM Pages 2

RECORDING           $      20.00
SURCHARGE           $       6.50

RECORDATION TAX FEE   $   2,756.55

WASH DC RECORDER OF DEEDS
LARRY TODD

Brown
92158

Form 668 (Y)(c)
(Rev. February 2004)

4606

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| | For Optional Use by Recording Office |

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #3
Lien Unit Phone: (800) 913-6050

Serial Number

622160510

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer EVA L RAMSEY

Residence    4001 D STREET SE
WASHINGTON, DC 20019

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2004 | XXX-XX-9562N | 03/02/2009 | 04/01/2019 | 9844.16 |
| 1040 | 12/31/2005 | XXX-XX-9562N | 03/02/2009 | 04/01/2019 | 14565.57 |
| 1040 | 12/31/2006 | XXX-XX-9562N | 03/02/2009 | 04/01/2019 | 14924.41 |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR WASHINGTON D.C. WASHINGTON, DC 20001 | Total $ | 39334.14 |

This notice was prepared and signed at    BALTIMORE, MD    , on this,

the  29th  day of  January , 2010 .

Signature R. A. Mitchell    Title BANKRUPTCY SPEC (410) 962-6838    23-99-6851

for AUDREY NORE

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)    Part 1 - Kept By Recording Office    Form 668(Y)(c) (Rev. 2-2004) CAT. NO 60028X

EXHIBIT
B

File No. **17821BS**
DEED-SHORT FORM D.C.

 
LT1-5-2006052228-1          LT2-0-0-2

**This Deed**, made this the 31st day of March, 2006, by and between **MY1STHOUSE.COM, LLC, a body corporate of the State of Maryland**, party of the first part, and **EVA L. RAMSEY**, party of the second part.

Witnesseth, that in consideration of the sum of **THREE HUNDRED THOUSAND DOLLARS 00/100 ($300,000.00)**, the party of the first part does hereby grant unto the party of the second part, in fee simple, as sole owner, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia which has a **Lot No. 64 in Square 5397**, being more fully described as follows, to wit:

Lot numbered Sixty-Four (64) in Square Fifty-Three Hundred Ninety-Seven (5397) in the subdivision made by Dan Pollin and Others, as per plat recorded in Liber 122 at folio 65 in the Office of the Surveyor for the District of Columbia.

Note said property now being known for assessment and taxation purposes as Lot 0064, Square 5397.

Being known as: 4001 D. Street, S.E., Washington, DC 20019.

Which has a mailing address of: **4001 D Street, SE
Washington, DC 20019**

Title Insurer: **Stewart Title Guarantee Company**

And the said party of the first part covenants that it will warrant specially the property hereby conveyed; and that it will execute such further assurances of said land as may be requisite.




EXHIBIT
C

In Testimony Whereof, MY1STHOUSE.COM, LLC, has caused these presents to be signed by CHARLES M. MARTIN, its Managing Member, and its corporate seal to be affixed hereto; and does hereby constitute and appoint said officer as its true and lawful attorney in fact for it and in its name to acknowledge and deliver these presents as its act and deed.

IN PRESENCE OF:

MY1STHOUSE.COM, LLC

By: CHARLES M. MARTIN, Managing Member

District Of Columbia, To Wit:

I, _David A Edlavitch_, a Notary Public in and for the aforesaid jurisdiction do hereby certify that CHARLES M. MARTIN, who is named as attorney-in-fact as aforesaid by virtue of the authority vested in him/her by said Corporation, and acknowledged said instrument to be the act and deed of said Corporation and the he/she executed the aforegoing and annexed deed, bearing the date of the 31st day of March, 2006, personally appeared before me in the said jurisdiction and acknowledged the same to be his/her/its act and deed.

Witness my hand and seal this the _31st_ day of _March,_
2006.

Notary Public
My Commission Expires: _10/1/07_

AFTER RECORDING RETURN TO:
Evergreen Title & Escrow Corp.
5801 Allentown Road, Suite 200
Camp Springs, MD 20746
File No. 17821BSI

DAVID A. EDLAVITCH
NOTARY PUBLIC
MONTGOMERY COUNTY MD

Doc# 2006052228 Fees:$6626.50
04/21/2006   8:53AM Pages 2
Filed & Recorded in Official Records
WASH DC RECORDER OF DEEDS LARRY TODD

| RECORDING | $ | 20.00 |
| SURCHARGE | $ | 6.50 |
| RECORDATION TAX FEE | $ | 3,300.00 |
| TRANSFER TAX FEE | $ | 3,300.00 |

LT1-5-2010055273-1

LT2-0-0-3

PREPARED BY:

BGWW#: 92188 YU

AFTER RECORDING, PLEASE RETURN TO:

Bierman, Geesing, Ward & Wood, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814

### DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEE

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEE, is made this 15th day of _____June_____ 2010, by and among BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP ("BAC HOME LOANS SERVICING, LP"), party of the first part, and HOWARD N. BIERMAN, JACOB GEESING AND CARRIE M. WARD, 4520 East West Highway, Suite 200, Bethesda, MD 20814, any of whom may act independently of the other (collectively, 'Substitute Trustees'), party of the second part. Each of the Substitute Trustees is licensed to practice law in the District of Columbia, and are members in good standing of the District of Columbia Bar.

WHEREAS, Eva L. Ramsey by Deed of Trust dated March 31, 2006, and recorded among the Land Records of the District of Columbia on April 21, 2006 bearing Instrument No. 2006052229, did grant and convey certain real estate known as:

LOT NUMBERED SIXTY-FOUR (64) IN SQUARE FIFTY-THREE HUNDRED NINETY-SEVEN (5397) IN THE SUBDIVISION MADE BY DAN POLIN AND OTHERS, AS PBR PLAT RECORDED IN LIBER 122 AT FOLIO 65 IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA.

Known as: 4001 D Street SE, Washington, DC 20019

in trust, to secure to B. F. Saul Mortgage Company, payment of a note ("Note") of even date therewith in the original principal amount of $300,000.00; and

WHEREAS, said Deed of Trust provides that the holder of the Note shall have the power and authority to appoint, by an instrument duly executed, acknowledged and recorded among the Land Records aforesaid, substitute trustee(s) in the place and stead of the trustee(s) named therein; and

WHEREAS, the party of the first part is the owner and holder of the note secured by said Deed of Trust.

NOW, THEREFORE WITNESSETH, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, the party of the first part by the execution and delivery of these presents, hereby appoints Howard N. Bierman, Jacob Geesing and Carrie M. Ward, as substitute trustees under the said Deed of Trust in the place and stead of the trustee or trustees originally named therein, or in place of any other trustee or trustees who have heretofore been substituted for the originally named trustee or trustees, the said Substitute Trustees being vested with all of the right, title and interest and clothed with all the rights, powers and privileges of the trustee or trustees originally named in said Deed of Trust.



EXHIBIT

D

Deed of Appointment of Substitute Trustee - DC
Secured Party: BAC Home Loans Servicing, LP
Page Two

    IN WITNESS WHEREOF, BAC Home Loans Servicing, LP, has caused these
presents to be executed the day hereinabove first written by BAC Home Loans Servicing, LP
FKA Countrywide Home Loans Servicing LP, its authorized Servicing Agent, by Josh Tremble,
of Bierman, Geesing, Ward & Wood, LLC, which individual the said BAC Home Loans
Servicing, LP FKA Countrywide Home Loans Servicing LP, has appointed as the party with
proper authority so to act for the purposes contained herein.

                              BAC Home Loans Servicing, LP

By:    BAC Home Loans Servicing, LP fka Countrywide
        Home Loans Servicing, LP

Josh Tremble
Bierman, Geesing, & Ward, LLC

STATE OF MARYLAND    :
COUNTY OF MONTGOMERY  :

    I, Stefanny M. Sanzetenea, a Notary Public in and for the State and County
aforesaid, do hereby certify that Josh Tremble, of Bierman, Geesing & Ward, LLC, attorney-in-
fact for BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, personally
appeared before me in the jurisdiction aforesaid, and executed the foregoing Deed of
Appointment of Substitute Trustee bearing the date of June 15, 2010, and being duly
sworn, he or she stated that he or she has the lawful authority to execute said instrument, and he
or she acknowledged the same to be his or her willful act and deed as well as that of the said
party of the first part.

Given under my hand and seal this 15th day of June, 2010.

My Commission Expires:          Notary Public

Party of the first part:

BAC Home Loans Servicing, LP fka Countrywide
Home Loans Servicing, LP
7105 Corporate Drive, Mail Stop PTX-C-35
Plano, TX  75024

Party of the second part:

Howard N. Bierman, Substitute Trustee
Jacob Geesing, Substitute Trustee
Carrie M. Ward, Substitute Trustee
4520 East West Highway, Suite 200
Bethesda, MD  20814

Doc# 2010055273 Fees:$26.50
06/16/2010   1:44PM Pages 3
Filed & Recorded in Official Records c
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING WITH EXTRA PAG$          20.00
SURCHARGE                      $          6.50

536015290

MIN   1000153-0536015290-8

# NOTE

March 31, 2006                    CAMP SPRINGS                    Maryland

[Date]                              [City]                         [State]

4001 D Street, SE, Washington, DC 20019

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 300,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **B. F. Saul Mortgage Company**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   **5.950**         %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**     day of each month beginning on        **May 1, 2006**       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **April 1, 2036**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   **P.O. Box 17000, Baltimore, MD 21203**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,789.02**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM

-5N (0005)                    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:                    13772432

610   118369352   N   001   001

EXHIBIT

E

 

536015290
MIN 1000153-0536015290-8

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials: _____



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
Eva L. Ramsey            -Borrower                                       -Borrower
SSN: 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

_____ (Seal)       _____ (Seal)
                   -Borrower                                       -Borrower

_____ (Seal)       _____ (Seal)
                   -Borrower                                       -Borrower

_____ (Seal)       _____ (Seal)
                   -Borrower                                       -Borrower

Pay To The Order of

COUNTRYWIDE BANK, N.A.
Without Recourse To
B. F. Saul Mortgage Company

Sandra J. Estes
Assistant Vice President

*[Sign Original Only]*

Pay to the order of:
Countrywide Home Loans, Inc.
Without Recourse
Countrywide Bank, N.A.
By: [signature]
Laurie Meder, SVP

Pay to the order of:
____________________
Without Recourse
Countrywide Home Loans, Inc.
By: [signature]
Michele Sjolander, EVP

536015290

Return To:
Document Control Dept.
7501 Wisconsin Avenue
Bethesda, MD 20814



LT2-0-0-16



LT1-3-2006052228-1

#17841

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

PURCHASE MONEY   MIN 1000153-0536015290-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 31, 2006
together with all Riders to this document.

(B) "Borrower" is EVA L. RAMSEY

Borrower's address is 4001 D Street, SE, Washington, DC 20019
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is B. F. Saul Mortgage Company

Lender is a corporation
organized and existing under the laws of the State of Maryland
Lender's address is 7501 Wisconsin Avenue, Bethesda, MD 20814

(D) "Trustee" is David N. Prensky

Trustee's address is 5225 Wisconsin Avenue, NW, Washington, DC 20015,
Washington, DC 20015

DISTRICT OF COLUMBIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®-6A(DC) (0205).02   Form 3009  1/01
                          (rev. 5/02)
Page 1 of 15          Initials: _____
        VMP Mortgage Solutions, Inc.
13772551

EXHIBIT
F
tabbies

536015290
MIN  1000153-0536015290-8

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **March 31, 2006**
The Note states that Borrower owes Lender **Three Hundred Thousand and 00/100**
                                                                               Dollars
(U.S. $ **300,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2036**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

                                                    Exhibit C-I-3 (Addendum)

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

13772433

-6A(DC) (0205).02              Page 2 of 15          Initials: _____          Form 3000 1/01 (rev. 6/02)

536015290
MIN   1000153-0536015290-8

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:

LOT NUMBERED SIXTY-FOUR (64) IN SQUARE FIFTY-THREE HUNDRED NINETY-SEVEN (5397) IN THE SUBDIVISION MADE BY DAN POLIN AND OTHERS, AS PER PLAT RECORDED IN LIBER 122 AT FOLIO 65 IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA.

SUBJECT TO COVENANTS OF RECORD.

THE AFORESAID FEE SIMPLE PROPERTY HAVING BEEN PURCHASED IN WHOLE OR IN PART WITH THE SUMS SECURED HEREBY.

Parcel ID Number:                                    which currently has the address of
4001 D Street, SE                                                [Street]
Washington, District of Columbia 20019     [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(DC) (0205).02              Page 3 of 18              Initials: _____   Form 3009 1/01 (rev. 5/02)

13772551

536015290
MIN   1000153-0536015290-8

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

Initials: _____

536015290
MIN   1000153-0536015290-8

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

536015290
MIN   1000153-0536015290-8

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

536015290
MIN   1000153-0536015290-8

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

-GA(DC) (0205).02                    Page 7 of 16          Initials: _ell_      Form 3009 1/01 (rev. 5/02)

13772551

536015290
MIN   1000153-0536015290-8

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(DC) (0205).02                                Page 8 of 16                    Initials: _____    Form 3009 1/01 (rev. 5/02)

13772551

536015290
MIN   1000153-0536015290-8

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value; unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(DC) (0205).02                        Page 9 of 16                    Initials: _____    Form 3009 1/01 (rev. 5/02)

13772551

536015290
MIN  1000153-0536015290-8

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(DC) (0205).02       Page 10 of 16       Initials: _____   Form 3009 1/01 (rev. 5/02)

13772551

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

Initials:

-6A(DC) (0205).02          Page 11 of 16          Form 3009 1/01 (rev. 5/02)

13772551

536015290
MIN   1000153-0536015290-8

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(DC) (0205).02                    Page 12 of 15              Initials: _____        Form 3009 1/01 (rev. 6/02)

13772551

536015290
MIN   1000153-0536015290-8

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

536015290
MIN   1000153-0536015290-8

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ Eva L. Ramsey _____ (Seal)
                                            EVA L. RAMSEY                -Borrower

                                            4001 D Street, SE            (Address)
                                            Washington, DC 20019

_____ (Seal)        _____ (Seal)
                              -Borrower                                  -Borrower

                              (Address)                                  (Address)

_____ (Seal)        _____ (Seal)
                              -Borrower                                  -Borrower

                              (Address)                                  (Address)

_____ (Seal)        _____ (Seal)
                              -Borrower                                  -Borrower

                              (Address)                                  (Address)

_____ (Seal)        _____ (Seal)
                              -Borrower                                  -Borrower

                              (Address)                                  (Address)

-6A(DC) (0205).02                Page 14 of 15            Form 3009 1/01 (rev. 5/02)

13772551

536015290
MIN  1000153-0536015290-8

*State of Maryland*
*Prince Georges*

~~DISTRICT OF COLUMBIA, ss:~~

I, ~~the undersigned~~                    , a Notary Public in and for the District *aforesaid*
~~of Columbia,~~ do hereby certify that

Eva K. Ramsey

personally known to me as the person(s) who executed the foregoing instrument bearing date of  31st
day of  March 2006     , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this   31st  day of   March, 2006

Notary Public, D.C.

MARIA McMANUS
NOTARY
PUBLIC
CHARLES COUNTY, MD

Initials: ___

Page 15 of 15

Form 3009 1/01 (rev. 5/02)

VMP -6A(DC) (0205).02

13772551

[NOTE: To be attached to Mortgagor Deed of Trust or any other security filing/recording]

**EXHIBIT C-I-3**

**FHA/VA/FNMA/FHLMC ADDENDUM**

As long as this Mortgage is outstanding, the Participating Lender and the Servicer, may declare all sums secured by this Mortgage to be immediately due and payable if:

(a)    all or part of the property is sold or otherwise transferred (other than by devise, descent or operation of law) by Borrower to a Purchaser or other transferee:

(i)    who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143 of the Internal Revenue Code; or

(ii)    who has had a present ownership interest in a principal residence or a beneficial interest in a "land trust" within or without the District during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143 of the Internal Revenue Code unless the residence being purchased is in a Targeted Area; or

(iii)    at an acquisition cost which is greater than the maximum percentage applicable of the average area purchase price income, all as provided in Section 143 of the Internal Revenue Code;

(iv)    who has an income in excess of the maximum percentage applicable of the average area median income, all as provided in Section 143 of the Internal Revenue Code; or

(b)    Borrower fails to occupy the property described in the Mortgage without the Lender's prior written consent; or

(c)    Borrower omits or misrepresents a material fact in an application for this Mortgage.

References are to the Internal Revenue Code in effect on the date of execution of the Mortgage and are deemed to include the implementing regulations.

If all or any part of the property is sold or transferred by Borrower without the Servicer's prior written consent, other than a transfer by devise, descent or by operation of law, the Servicer may, at the Servicer's option, declare all the sums secured by this Mortgage to be immediately due and payable.

BORROWER    Eva L. Ramsey

BORROWER

Doc# 2006052229 Fees:$124.50
04/21/2006   8:53AM Pages 16
Filed & Recorded in Official Records
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING            $    118.00
SURCHARGE            $      6.50

Kutak Rock - Firm Library-4819-2930-7136.7

GOVERNMENT OF THE DISTRICT OF COLUMBIA
OFFICE OF TAX AND REVENUE




LT1-5-2010055309-1

RECORDER OF DEEDS

515 "D" STREET, N.W.
WASHINGTON, DC 20001

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

(Pursuant to Public Law 90-566, approved October 12, 1968)

TO:  (List Name and address of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

Eva L. Ramsey
4001 D St., SE, Washington, DC 20019
(202) 583-1443

LT2-0-0-2

Occupant
4001 D St., SE, Washington, DC 20019

FROM: Bierman, Geesing, Ward & Wood, LLC          PHONE: 301-961-6555

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD AT THE OFFICE OF Alex Cooper Auctioneers, Inc., 5301 Wisconsin Ave., N.W., Suite 750, Washington, DC 20015 ON July 22, 2010 at 10:40 AM, THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deeds on April 21, 2006

Liber: _____  Folio: _____     Instrument No. 2006052229

Maker(s) of Note secured by the instrument:
Eva L. Ramsey
4001 D St., SE, Washington, DC 20019          ; (202) 583-1443

Description of Property:_____dwelling_____
(two-story brick, dwelling, apartment building, vacant lot, condominium unit, etc.)

Address:  4001 D St., SE, Washington, DC 20019

Lot & Square No.  64  /  5397           or Parcel No:_____

Holder of the Note: BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP; (800) 262-4218 c/o  Bierman, Geesing, Ward & Wood, LLC, Suite 200, 4520 East West Highway Bethesda, MD  20814, 301-961-6555

Balance owed on the note: $311,037.96 approximately as of 6/16/2010, plus all attorney's fees, foreclosure costs, and all accruals, under the terms of the Deed of Trust and Note, through the date of tender.

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 "Right to Cure a Residential Mortgage Foreclosure Default Act of 1984" $28,174.36 approximately as of 6/16/2010 plus attorney's fees, foreclosure costs, and all accruals, under the terms of the Deed of Trust and Note, through the date of tender.

Person to contact to stop foreclosure sale: Howard N. Bierman, Esq., Bierman, Geesing, Ward & Wood, LLC, Suite 200, 4520 East West Highway, Bethesda, MD  20814  (301)-961-6555
  (Address)                                                                (Phone Number)
                                                        (over)
            THIS COMMUNICATION IS FROM A DEBT COLLECTOR

EXHIBIT
G

tabbies

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    I, hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on June 16, 2010; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

June 16, 2010
(Date)

_____, agent
(Signature of the Noteholder or his agent)

I, Marcia Levenstein, a Notary Public in and for Baltimore County, MD, DO HEREBY CERTIFY THAT Jennifer Neilson, party/ies to this Notice of Foreclosure Sale bearing date on the 16th day of June, 2010 personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be his/her/their act and deed.

    Given under my hand and seal this the 16th day of June, 2010.

_____
Notary Public

My commission expires 10/01/10

ROD form ADM/04
Revised  1/86

AFTER RECORDING RETURN TO:
Bierman, Geesing, Ward & Wood, LLC
Suite 200
4520 East West Highway
Bethesda, MD  20814

Alex Cooper Auctioneers, Inc.
Folio No. W-5708

Doc# 2010055389 Fees:$26.50
06/16/2010   1:46PM Pages 2
Filed & Recorded in Official Records c
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING          $       20.00
SURCHARGE          $        6.50

**Internal Revenue Service**                    **Department of the Treasury**


Date: April 5, 2013                              Person to Contact:
                                                 SUE FAWLEY
                                                 Employee Identification Number:
                                                 52-08268
                                                 Contact Telephone Number:
                                                 (443)523-1944
B/W/W Law Group, LLC                             Contac Fax Number:
Attn:  Reese L. Lesko, Esquire                   (443)523-1974
4520 East West Highway                           Contact Address:
Bethesda, MD 20814                                 212 W. MAIN ST, SUITE 201
                                                   SALISBURY, MD 21801-5006


Dear Mr. Lesko:

This letter is in response to your application for a Certificate of Discharge of Property from Federal tax lien
for Eva L. Ramsey, 4001 D Street, SE, Washington, DC  20019.

☒        Your application has been denied for the following reason:

Your request does not meet the criteria for a Discharge of the Federal tax lien.  The Internal Revenue
Service is the superior creditor at this time.  You will either need to full pay the Federal Tax Lien or
vacate the sale and re-advertise.   A payoff letter to reflect the updated amounts of the liens is enclosed.

Publication 786 is enclosed to provide you with the necessary actions required with a non-judicial sale.

                                          Sincerely yours,

                                          V. SCYE
                                          Advisory Group Manager

Enclosures

☒  Publication 786


EXHIBIT
H

Letter 4025 (11-2005)
Catalog Number 47461T

**Internal Revenue Service**                                    **Department of the Treasury**

Date: 04/05/2013

| | **Payoff Number:** |
| | $39,743.30 |
| | **Person to Contact:** |
| | SUE FAWLEY |

B/W/W Law Group, LLC
Attn: Reese L. Lesko, Esquire
4520 East West Highway
Bethesda, MD  20814

**Contact Identification Number:**
52-08268
**Contact Telephone Number:**
(443)523-1944
**Taxpayer Identification Number:**

SSN        -    -
EIN

We filed a Notice(s) of Federal Tax Lien in Washington, DC on Eva Ramsey, 4001 D Street, SE, Washington, DC 20019 relating to the tax liabilities listed below.

Statutory Additions to: 04/30/2013

| Type of Tax | MFT | Tax Period | Identifying Number | Name Control | Unpaid Balance | Interest | Penalty | Total |
|---|---|---|---|---|---|---|---|---|
| 1040 | 30 | 12/31/2005 | xxx-xx-9562 | RAMS | $13,536.57 | $2,326.32 | $640.95 | $16,503.84 |
| 1040 | 30 | 12/31/2008 | xxx-xx-9562 | RAMS | $2,104.02 | $215.42 | $274.84 | $2,594.28 |
| 1040 | 30 | 12/31/2009 | xxx-xx-9562 | RAMS | $2,678.71 | $278.35 | $619.04 | $3,576.10 |
| 1040 | 30 | 12/31/2010 | xxx-xx-9562 | RAMS | $15,235.42 | $680.94 | $1,152.72 | $17,069.08 |

$39,743.30

This letter may include a second page listing additional tax liabilities.

The amount needed to release the lien(s) is $39,743.30.  We will issue a Certificate of Release of Federal Tax Lien immediately only if this amount is paid by 04/30/2013 using one of the following methods of payment:

1. Cash (presented at a local IRS office only)
2. Certified or cashier's check
3. Treasurer's check drawn on a national / state bank or trust company
4. Postal or Bank money order.

A copy of this letter must accompany the payment in order to get an immediate release.  If the payment is made in any other form or this letter is not included, the release will be issued within 30 days after we receive the payment or we receive notification that the funds have been transferred to the United States Treasury.  For more information regarding the different forms of payment, please visit our website at www.irs.gov.

Letter 3641 (02-2010)
Catalog Number: 35217J

-2-

Eva Ramsey

Make your check or money order payable to the United States Treasury.  To properly apply the payment, write the full taxpayer identification number on this letter (in the upper right corner under Taxpayer Identification Number) and on the payment check or money order.  Mail the payment and a copy of this letter to the address provided below.  It is not necessary to send the payment by express or certified mail; it will not affect the processing of the payment.  Keep a copy of this letter for your records.

Please send the payment and a copy of this letter to:

    Internal Revenue Service
    212 W. MAIN ST, SUITE 201
    SALISBURY, MD 21801-5006000

If you have any questions, please contact the person whose name and telephone number appear at the top of this letter.

                Sincerely,

                Ms. Sue Fawley
                Advisor/Reviewer

**Letter 3641 (02-2010)**
Catalog Number: 35217J

Instructions for Preparing a
# Notice of Nonjudicial Sale of Property and Application for Consent to Sale



**IRS**

## General Information

In order for property described in section 7425(b) to be sold at a nonjudicial sale free and clear of liens or title of the United States, a notice of the sale must be provided in accordance with section 7425(c) or consent to the sale must be obtained in accordance with section 7425(c).

## Where to Submit Your Notice or Application

IRS, Attn: Collection Advisory Group Manager

*(Address your notice or application to the IRS Collection Advisory office responsible for the geographical area where the Notice of Federal Tax Lien was filed. Use Publication 4235, Collection Advisory Group Addresses, to find the Collection Advisory office where you should mail or personally deliver your notice or application.)*

## When and How To Submit a Notice of Sale

A Notice of Sale shall be submitted in writing by registered or certified mail or by personal service not less than 25 days prior to such sale, or date of termination of the contract for deed. The 25 day period commences upon receipt of an adequate notice of nonjudicial sale. The date of receipt for notices sent by certified or registered mail is determined by the U.S. Postal Service postmark date.

 **WARNING:** A notice which is not received in the manner described in When and How to Submit a Notice of Sale, not received timely, or is sent to an address other than that described in Where to Submit Your Notice or Application, will not be effective to remove the federal tax lien from the property and extinguish title held by the United States, without the express consent of the United States. *(See Consent to Sale)*

**NOTE:** Although notice of sale must be given prior to the sale, the 25 day period does not apply to sales described in item 4 below, in which case any proceeds, exclusive of costs, shall be held as a fund subject to United States liens and claims on the property sold, for not less than 30 days after the date of sale. Notices received which are deemed to be inadequate will be returned via **Letter 1840**, *Notice of Inadequacy*, for necessary action.

## Notice of Sale

A Notice of sale will be considered as adequate if it contains the following information:

1. The name and address and telephone number of the person submitting the notice;

2. A copy of each **Form 668(Y)(c)**, *Notice of Federal Tax Lien*, affecting the property to be sold **or**, from the recorded federal tax lien, you may provide the following information:

   a. The name of the IRS Area *(District)* office or the place where the notice was prepared and signed;
   b. The name and address of the taxpayer; and
   c. The date and place where the notice of lien was filed.

3. A detailed description, including the location of the property affected by the tax lien. For **real property,** give the <u>complete</u> physical address; the legal description contained in the title or deed of the property and, if available, a copy of the abstract of title;

4. If applicable, the reasons the property is liable to perish or become greatly reduced in value if kept a minimum of 25 days, or reasons it cannot be kept for that period of time without incurring great expense;

5. The date, time, place and terms of the sale of the property or the date the taxpayer's interest in the property is terminated; and

6. The approximate amount of principal obligation, including interest, due the person selling the property and a complete description of any expenses. This may include legal expenses, selling costs, maintenance fees and expenses, which will be charged against the sale proceeds. NOTE: not all expenses will be reimbursable.

Only the original of a Notice of Sale is required. If a duplicate and a written request for acknowledgement are submitted with the original application, the Collection Advisory Group Manager will indicate the date and time received on the duplicate and return it to the originator.

*(over)*

Publication 786 (Rev. 4-2011)  Catalog Number 46757E  Department of the Treasury **Internal Revenue Services** www.irs.gov

## Consent to Sale

Regardless of the foreclosing instructions as to the adequacy and timeliness of the sale, a nonjudicial sale of property shall divest the property of the United States liens or title, if the Collection Advisory Group Manager for the IRS office where the sale is to take place consents to the sale of the property free of the liens. Consent may be given when adequate protection is assured the liens or title to the property. Protection is considered adequate if:

1. The taxpayer has no equity in the property, or

2. The taxpayer's interest in the property is assigned to the Collection Advisory Group Manager, or

3. The proceeds in excess of prior encumbrances are assigned to the Collection Advisory Group Manager, or

4. The sale divests the taxpayer of all rights, title and interest in the property, and the proceeds are to be held as a fund subject to the United States liens and claims in the same manner and priority as the liens and claims were held on the discharged property, or

5. There are other known circumstances which are acceptable to the Collection Advisory Group Manager.

## Application for Consent

Any individual desiring the Collection Advisory Group Manager's consent to sell property free and clear of a Federal Tax Lien, or a title derived from the enforcement of that lien must submit an application in triplicate. The application must be clear, concise and address all requirements. The application must contain the following:

1. The same information that is listed as a requirement for the Notice of Sale;

2. The basis for requesting the consent;

3. A statement indicating that adequate protection is given to the United States lien or title; and

4. You must make the following declaration over your signature and title. "Under the penalties of perjury, I declare that I have examined this application *(including any accompanying schedules, exhibits, affidavits, and statements)* and to the best of my knowledge and belief it is true, correct, and complete."

## Internet Sales

A Notice of Sale should be given to the Collection Advisory Group Manager in the IRS office where the property is located, when the sale is conducted over the Internet.

NOTE: All other provisions referred to in this publication apply.

Office of Tax and Revenue

311 Online District Residents Businesses Visitors Media Online Services



# Office of Tax and Revenue

Search [ ]  Search

dc.gov | otr.cfo.dc.gov

| Home | Services | Individual Income Tax | Business Tax | Real Property | Recorder of Deeds | Tax Forms and Publications | About |

**CFO HOME**

**TAXPAYER SERVICE CENTER**

**REAL PROPERTY SERVICES**
Property Tax Bills
Property Tax Rates and Calculation
Property Assessment Process
Property Assessment Appeals
Tax Relief Credits
Search Real Property Sales Database
Search Real Property Assessment Database

◄Prev

## Property Detail

**Address:** 4001 D ST SE
**SSL:** 5397 0064

### Record Details

| | | | |
|---|---|---|---|
| Neighborhood: | FORT DUPONT PARK | Sub-Neighborhood: | B |
| Use Code: | 13 - Residential-Semi-Detached-Sing | Class 3 Exception: | No |
| Tax Type: | TX - Taxable | Tax Class: | 003 - Vacant |
| Homestead Status: | ** Not receiving the Homestead Deduction | | |
| Assessor: | WESLEY RIGGINS | | |
| Gross Building Area: | | Ward: | 7 |
| Land Area: | 5,304 | Triennial Group: | 1 |

### Owner and Sales Information

| | |
|---|---|
| Owner Name: | FEDERAL NATIONAL MORTGAGE ASSOCIATION MAIL STOP PTX C 35 |
| Mailing Address: | 7105 CORPORATE DR; PLANO TX75024-4100 |
| Sale Price: | $250,595 |
| Recordation Date: | 09/16/2010 |
| Instrument No.: | 81166 |

### Tax Year 2014 Preliminary Assessment Roll

| | Current Value (2013) | Proposed New Value (2014) |
|---|---|---|
| Land: | $125,070 | $115,840 |
| Improvements: | $99,470 | $100,120 |
| Total Value: | $224,540 | $215,960 |
| Taxable Assessment: * | $224,540 | $215,960 |

* Taxable Assessment after Tax Assessment Credit and after $69,100 Homestead Credit, if applicable. (Click here for more information.)

** If you believe you should be receiving tax relief through the Homestead deduction program and if you are domiciled in the District and this property is your principal place of residence, you can access the link below, complete the form, and return it per the instructions. For additional information regarding the Homestead program, call (202)727-4TAX. Click here to download the Homestead Deduction and Senior Citizen Tax Relief application *

**View Tax Information | View Property Features | View Payments | View Current Bill**

| District News | Information Centers | Community | DC Government | Contact Us |
|---|---|---|---|---|
| Press Briefings & Schedules | 72hours Emergency Planning | Citywide Calendar | Mayor's Office | Call 311 |
| Statements & Releases | Business | Census | DC Agencies | Contact the Mayor |
| Subscribe to Emails | Consumer Protection | DC Jobs | DC Council | Contact Agency Directors |
| Subscribe to Text Alerts | Education | DC Procurement | Elected Officials | Send Feedback |
| Online Chats | Health | Green DC | District Appointees | Search Telephone Directory |
| DC.Gov Social Networks | Social Services | DC One Card | Courts | Submit Service Requests |
| DC Webcasts | Residents | Interagency on Homelessness | DC Laws | Make FOIA Requests |
| Government Closures | Visitors | Recovery.dc.gov | DC Statehood | |
| | | | Mobile Site | |

Accessibility | About DC.Gov | DC Guide | Wi-Fi Hotspots | Feedback | Privacy & Security | Terms & Conditions



EXHIBIT
I